[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Greenwich, Connecticut on May 1, 1993. No children have been born to the wife during the marriage, however, she has a son by a previous marriage which ended with the death of her husband. The parties have been living separate and apart since approximately June 1998. The wife resides in the family rental unit with her son. The wife is an architect by profession. Apparently at the time of her marriage she was working full time. She cut back to part time sometime after the marriage, however, she also formed her own company to do side work and now works more or less on a full time basis between these jobs. She is 53 years old and described for the court a series of health issues including heart palpitations, migraines, and food allergies all brought on by CT Page 12454 stress. The husband is 48 years old and is employed by the U.S. Postal Service as a letter carrier. He was working for the Postal Service at the time of the marriage and also had a brief career as a musician. He testified that he has some ambition to advance at his employment and to eventually become a postmaster.
The husband says that the reason for the breakdown was "poor communication and the fact that the parties each failed to understand the other's needs." He also indicated that they each knew how to (and did) push each other's buttons. The wife described several issues related to the breakdown of the marriage including "control issues," verbal abuse and at least two instances where the parties' verbal scuffling resulted in physical injury to her. However, the principal issue remains financial. It is the wife's contention that at the time of the marriage she was receiving social security income ("SSI") on behalf of her son, Thor Christensen, as a result of her late husband's contributions. Historically, the wife deposited these funds in an account for the benefit of her son to be used for his college education. She alleges that the wedding as well as two automobiles, one for husband and one for the wife, were paid for from these funds, and that there was an understanding between both parties that these sums would be returned to that account. It is her further testimony that these sums have not been repaid. The husband denied that there was any agreement to repay these funds, and he testified that he considered them to be family funds, as were his income and his assets. The wife claims that the wedding cost $7,942, and that the monies which were withdrawn for the husband's car amounted to $10,400. Neither party seeks periodic alimony, however, the wife wants to be reimbursed by the husband for those major expenditures so that she can put them back in the college fund for her son, who is now entering his junior year in college.
In addition, the husband testified that he has a Thrift Savings Plan ("TSP") with the U.S. Postal Service to which he contributes through a payroll deduction of approximately $80 per week. Upon questioning by the court, he denied having a pension in addition to the TSP. The court finds that his testimony lacks credibility. A review of his financial affidavit on file with the court reveals that he contributes to two distinct plans, a retirement plan and a TSP. The wife testified that with the exception of a bed, virtually all of the home furnishings in the apartment were hers from her previous marriage. Each has a modest IRA.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-40, 46b-51, 46b-62, 46b-63, 46b-81, and 46b-82
CT Page 12455 of the Connecticut General Statutes, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
 4. That there was no credible evidence of an agreement between the parties regarding the repayment of funds to the account held by the wife for the benefit of Thor Christensen; that monies were in fact withdrawn from that account for the benefit of the parties, including but not limited to $7,942 for the wedding and $10,400 for the husband's car; and that it is equitable and appropriate that the husband repay a portion of these sums to the extent that he derived a benefit therefrom.
 5. That at the time of the marriage, the husband was vested in a certain retirement plan at the U.S. Postal Service entitled Thrift Savings Plan (TSP) as well as a retirement plan; that during the marriage the wife made significant contributions both financially and as a homemaker; that it is equitable and appropriate that the wife share in any contributions and appreciation thereto for the period starting with the date of the marriage (5-1-93) to and including the date of separation (6-20-98); and that an appropriate coverture percentage would be 35% of each plan.
 6. That each party has a demonstrable earning capacity and is capable of self-support; and that it is equitable and appropriate that no alimony be awarded to either party.
 ORDER
IT IS HEREBY ORDERED THAT:
CT Page 12456
 1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. No alimony is awarded to either party.
 3. The husband shall pay to the wife a lump sum (without interest) in the amount of $14,371 as follows: $5,000 on or before October 5, 2001, and the sum of $250.00 per month commencing November 1, 2001 and monthly thereafter until the same shall be paid in full.
 4. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law. The wife shall be responsible for the payment of any premiums due for such coverage.
 5. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon.
6. Personal property shall be divided as follows:
 A. The home furnishings, including the piano, at the former marital residence, 23 Arther Street, Greenwich, shall be the sole property of the wife without any further claims by the husband.
 B. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 C. Each party shall keep his or her bank account balances and IRAs free and clear of any claims by the other.
 D. The wife shall be entitled to keep her jewelry CT Page 12457 and office equipment free and clear of any claims by the husband.
 7. Effective as of September 1, 2001, the then balance of the Thrift Savings Plan ("Plan") of the husband through his employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the wife, 82.5% to the husband and 17.5% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 8. Effective as of the date of this Memorandum of Decision, that portion of the United States Postal Service Retirement Plan ("Plan") of the husband through his employer and vested and accrued as of the date of this Memorandum of Decision, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the wife, 82.5% to the husband and 17.5% to the wife. Unless the parties shall otherwise agree, the husband shall elect a joint and survivor annuity, and in the event that the husband shall predecease the wife prior to drawing his pension, the wife shall be entitled to 35% of that portion of the survivor benefit vested and accrued as of September 1, 2001. Any benefit vesting and accruing thereafter shall belong to the husband. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
CT Page 12458
 9. Except as otherwise set forth herein, each party shall be responsible for their respective attorney's fees and costs incurred in connection with this action. However, both parties shall share the reasonable attorneys fees incurred in the preparation and filing of the qualified domestic relations orders, one-third by the wife and two-thirds by the husband.
 10. The Court hereby restores the former married name of the wife, to wit: KAREN KALMER CHRISTENSEN.
THE COURT
SHAY, J.